FILED

February 12 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0329

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 33

MING DA SITU and PEI SHU ZHOU,

        Plaintiffs and Appellants,

    v.

H. DOUGLAS SMOLE, as successor trustee
of the LOIS M. MURPHY revocable trust,

        Defendant and Appellee.


APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis and Clark, Cause No. CDV-2009-732
                      Honorable Kathy Seeley, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                R. J. "Jim" Sewell, Jr., Scott H. Clement, Smith Law Firm, P.C.,
                Helena, Montana

        For Appellee:

                Scott M. Svee, Jackson, Murdo & Grant, P.C., Helena, Montana


                            Submitted on Briefs:  December 19, 2012

                                        Decided:  February 12, 2013


Filed:

                  _____
                                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Ming Da Situ and Pei Shu Zhou (collectively "Situs") appeal from an order and judgment of the First Judicial District Court, Lewis and Clark County, dismissing Situs' breach of lease claim on statute of limitation grounds and granting judgment in favor of Lois M. Murphy[1] (Murphy). We affirm.

## ISSUES

¶2     Situs raise the following two issues on appeal:

¶3     1. Did the District Court err in granting Murphy's motion to dismiss in light of Situs' presentation of facts to demonstrate that the statute of limitations had not expired, as well as facts to demonstrate that Murphy should have been estopped from claiming the statute of limitations as a defense?

¶4     2. Did the District Court improperly consider matters outside the pleadings in ruling on Murphy's motion to dismiss, and fail to provide proper notice and an opportunity for the Situs to present all pertinent materials pursuant to a M. R. Civ. P. 56 motion for summary judgment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     On or about October 14, 1989, the Situs acquired the assets of a restaurant located at 1306 Euclid Avenue, in Helena, Montana. The real property on which the restaurant building was located was and continues to be owned by Murphy. Situs and Murphy

---

[1] Lois M. Murphy passed away during the pendency of this case before the District Court. H. Douglas Smole, as successor trustee of the Lois M. Murphy revocable trust, has been substituted as a party to the proceedings.

2

entered into a Memorandum of Agreement (the "Lease") dated October 4, 1989, that granted Situs a ten-year lease of Murphy's real property on which the building was situated. The Lease required Situs to make monthly payments of $175 to Murphy. The Lease granted Situs the option to purchase Murphy's real property at the October 3, 1999 expiration of the Lease. The relevant provision of the Lease provided as follows:

> IT IS FURTHER AGREED, that at the expiration of the full term of the within lease agreement, [Situs] shall have, and are hereby granted, an option to purchase from [Murphy] the land which is the subject matter of this lease, at a price mutually agreeable to the parties, it being understood and agreed that in the event that the parties hereto find themselves unable to reach agreement as to the fair value of said land (exclusive of improvements other than paving) at the date of exercise of said option, that parties shall hire mutually acceptable independent qualified appraisers at mutual expense, to evaluate said land, and it is understood and agreed that the parties hereto shall accept said appraisal as fully determinative of the purchase price to be paid.

¶6     Situs claimed that they provided written notice to Murphy of their interest in purchasing the property, although the date of such notice was not provided. Situs alleged that Murphy agreed to the appointment of an independent appraiser on September 28, 2000, but Murphy never followed through in procuring an appraisal.

¶7     Situs continued to pay Murphy $175 per month until April 2008. In April 2008, Murphy sent Situs a written notice that the monthly rental rate would increase to $650 per month beginning May 1, 2008. Situs ignored this notice and continued to pay $175 per month through March 2009. Murphy served Situs with written notice of tenancy termination dated March 31, 2009. The notice demanded unpaid rent in the amount of $5,700, which represented the difference between the $650 monthly payment demanded by Murphy and the $175 monthly payments made by Situs over the course of the

3

preceding year. Situs continued to send monthly payments of $175 to Murphy through August 2009. Murphy rejected all of Situs monthly payments that occurred after Murphy sent notice of tenancy termination.

¶8 On August 17, 2009, Situs filed a complaint in District Court requesting a declaratory judgment and order requiring Murphy to select an independent appraiser and sell the property. In addition, Situs sought damages for loss of prospective sales from their restaurant business allegedly caused by Murphy's breach of the Lease, together with costs and attorney fees. Murphy filed an answer on September 4, 2009, which included a counterclaim for unlawful detainer. Murphy also filed a motion to dismiss the complaint pursuant to M. R. Civ. P. 12(b)(6) arguing that the applicable statute of limitations had expired. On July 22, 2010, the District Court dismissed Situs' complaint on statute of limitations grounds. Situs attempted to appeal the District Court's dismissal of their complaint to this Court, but their appeal was dismissed because Murphy's counterclaim was still pending in District Court.

¶9 On April 14, 2011, Murphy filed a motion for summary judgment on her counterclaim for unlawful detainer. The District Court held oral argument on the motion for summary judgment on August 9, 2011, and granted summary judgment in favor of Murphy in an order dated January 19, 2012. The District Court determined that Murphy was entitled to recover the requested rent, trebled for any amounts due after May 1, 2009. The District Court also ordered Situs to vacate the property within 30 days. A subsequent April 26, 2012 order granted Situs an additional 60 days to vacate the property. On May 30, 2012, the District Court entered a final judgment requiring Situs to remove all of their

4

property from Murphy's lot by June 25, 2012, and awarding Murphy $5,700 in unpaid rent and trebled rent totaling $66,300 for all rent due after May 1, 2009.

¶10 Situs ask the Court to vacate the grant of summary judgment on Murphy's unlawful detainer counterclaim should the Court determine that the District Court erred in granting Murphy's motion to dismiss, but they do not directly challenge any of the District Court's conclusions regarding Murphy's counterclaim on appeal. Rather, their appeal is limited to a review of the District Court's decision to dismiss the Situs' complaint on statute of limitations grounds.

## STANDARDS OF REVIEW

¶11 We review de novo a district court's ruling on a motion to dismiss for failure to state a claim pursuant to M. R. Civ. P. 12(b)(6). *Meagher v. Butte-Silver Bow City-County*, 2007 MT 129, ¶ 13, 337 Mont. 339, 160 P.3d 552; *Plouffe v. State*, 2003 MT 62, ¶ 8, 314 Mont. 413, 66 P.3d 316. The determination of whether a complaint states a claim is a conclusion of law, and the district court's conclusions of law are reviewed for correctness. *Farmers Coop. Ass'n v. Amsden*, 2007 MT 287, ¶ 9, 339 Mont. 452, 171 P.3d 684; *Guest v. McLaverty*, 2006 MT 150, ¶ 2, 332 Mont. 421, 138 P.3d 812.

## DISCUSSION

¶12 *Did the District Court err in granting Murphy's motion to dismiss in light of Situs' presentation of sufficient facts to demonstrate that the statute of limitations had not expired, as well as facts to demonstrate that Murphy should have been estopped from claiming the statute of limitations as a defense?*

¶13 A motion to dismiss under M. R. Civ. P. 12(b)(6) allows the district court to examine only whether "a claim has been adequately stated in the complaint." *Meagher*,

5

¶ 15. The court is limited to an examination of the contents of the complaint in making its determination of adequacy. *Meagher*, ¶ 15. The effect of a Rule 12(b)(6) motion to dismiss is that all of the well-pleaded allegations in the complaint are admitted as true, and the complaint is construed in the light most favorable to the plaintiff. *Amsden*, ¶ 9; *Plouffe*, ¶ 8. Therefore, we will affirm the district court's dismissal only if we conclude that the plaintiff would not be entitled to relief based on any set of facts that could be proven to support the claim. *Guest*, ¶ 2; *Plouffe*, ¶ 8.

¶14 The District Court determined that under Situs' version of the facts as alleged in the complaint, their claims would be barred by the statute of limitations. The District Court relied on § 27-2-202(1), MCA, which states that the "period prescribed for the commencement of an action upon any contract, obligation, or liability founded upon an instrument in writing is within 8 years." Since the written Lease expired in October 1999, the District Court reasoned that § 27-2-202(1), MCA, would function to bar any contract claim commenced after October 2007. Alternatively, the District Court determined that any implied contract claim would be barred by § 27-2-202(2), MCA, which provides that the "period prescribed for the commencement of an action upon a contract, account, or promise not founded on an instrument in writing is within 5 years." The District Court concluded that the impliedly renewed lease agreement ended in October 2000, so any action commenced after October 2005 would be time-barred by this provision.

¶15 Situs argue that the District Court erred in dismissing their complaint because they effectively alleged a sufficient set of facts to state a claim. Situs maintain that Murphy's

6

repudiation took place in November 2007, which would extend the statute of limitations until 2015. Situs rely on *Wright v. Brooks*, 47 Mont. 99, 130 P. 968 (1913), to support their contention that notwithstanding a specific repudiation of an obligation by a vendor, a vendee in possession is not barred from suing for specific performance by delay, as his possession is the continued assertion of his claim.

¶16    *Wright* involved a claim for specific performance by a buyer under an oral contract for the sale of real estate. The agreement to sell the property was made in 1898, and the lawsuit was commenced over thirteen years later, in 1911. *Wright*, 47 Mont. at 108, 130 P. at 969. The buyer possessed and improved the property during this thirteen-year period. *Wright*, 47 Mont. at 106, 130 P. at 968. The Court cited to the general rule that specific performance will be ordered in cases where the buyer takes possession and makes improvements with the seller's knowledge or consent. *Wright*, 47 Mont. at 108, 130 P. at 969. The Court determined that "where the vendee has made repeated efforts to pay, and stands ready, able and willing to pay, the vendor is placed in the same position as though payment had been made; that is to say, he holds the legal title in trust for the vendee." *Wright*, 47 Mont. at 108, 130 P. at 969. Under this theory, the Court held that the statute of limitations does not commence to run until the vendor has in some manner disavowed his trust. *Wright*, 47 Mont. at 109, 130 P. at 969.

¶17    We find *Wright* distinguishable from the instant case in several important ways. First, the Lease merely granted Situs an option to purchase the real property, with the terms of the deal to be settled at a later date only if the option was exercised. This stands in contrast to *Wright*, where all that remained under the agreement was the exchange of

7

money for title. Under these facts, it cannot be said that Murphy held title to the real property in trust for Situs. Second, Situs were not standing ready to tender a previously agreed-upon sum which Murphy expressly rejected. Situs failed to timely complete the steps needed to arrive at a fair market price or timely commence an action to protect their rights. Third, Situs possessed the real estate under a lease, unlike in *Wright*, where the possession of the land was pursuant to a contract for purchase. The factual and legal distinctions between *Wright* and the instant case render it unpersuasive.

¶18 More recent decisions from this Court are instructive. In *Nevala v. McKay*, 178 Mont. 327, 583 P.2d 1065 (1978), the lessor agreed to lease a parcel of ranch land to lessee from 1964 to 1971, and the lease was to continue thereafter on a year-to-year basis unless terminated by one of the parties. The lease also granted the lessee a right of first refusal if the lessor decided to sell the land. *Nevala*, 178 Mont. at 328-29, 583 P.2d at 1066. Instead of executing written one-year extensions, the parties wrote a three-year handwritten extension of the lease to December 1, 1974, by writing on the back of the original lease. *Nevala*, 178 Mont. at 329, 583 P.2d at 1066. After 1974, the Nevalas stayed on the farm until 1975 with no written lease extensions. *Nevala*, 178 Mont. at 329, 583 P.2d at 1066. In September 1975, the lessor offered to sell the land to the lessee, but before the lessee obtained financing and tendered the purchase money, the lessor sold the land to a third party. *Nevala*, 178 Mont. at 329, 583 P.2d at 1067. The lessee sought specific performance of the right of first refusal contained in the lease. *Nevala*, 178 Mont. at 330, 583 P.2d at 1067.

8

¶19     We held that the lessee was a holdover tenant when he attempted to assert his right of first refusal, and as such, the lessee had no right to exercise the right of first refusal. *Nevala*, 178 Mont. at 332, 583 P.2d at 1068. This Court recognized that "a few jurisdictions have allowed holdover tenants to exercise an option to purchase or right of first refusal during the holdover period, but by far the greater weight of authority is that such option or right cannot be exercised by a lessee holding over after the expiration of the lease." *Nevala*, 178 Mont. at 332, 583 P.2d at 1068. In reaching its conclusion, the Court rejected the lessee's contention that every provision of an expired lease is extended into a holdover period based on the language of § 42-205, R.C.M. (1947),[2] which provided as follows:

> If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts a rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month, when the rent is payable monthly, nor in any case one year.

The Court also relied on *Miller v. Meredith*, 149 Mont. 125, 423 P.2d 595 (1967) (overruled on other grounds by *Rasmussen v. Lee*, 276 Mont. 84, 916 P.2d 98 (1996)), in which we explicitly held that an option to purchase does not carry over into a holdover tenancy because the lease and the option are distinct agreements.

¶20     The Lease granted Situs an option to purchase the real estate "at the expiration of the full term" of the Lease, which expired pursuant to its terms on October 3, 1999. The Lease did not contain any language permitting renewal or extension beyond the Lease

---

[2] The current version of § 42-205, R.C.M. (1947), is similar in pertinent parts and contained in § 70-26-204, MCA.

9

term. Following the expiration of the Lease, Situs continued to pay monthly rent in the same amount as set forth in the Lease. Situs occupied the premises as holdover tenants until receiving a notice of termination on March 31, 2009. The notice of termination ended the holdover tenancy as of May 1, 2009.

¶21 As discussed in *Nevala* and *Miller*, the option to purchase in the Lease is a covenant which is separate from and independent of the Lease. The option to purchase was not a term of the tenancy. Therefore, the option to purchase does not extend throughout the pendency of the holdover tenancy and cannot be exercised at any point later than granted by the Lease. Section 70-26-204, MCA, states that:

> If a lessee of real property leased under an arrangement not governed by Title 70, chapter 24,[3] remains in possession of the property after the expiration of the hiring and the lessor accepts rent from the lessee, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding 1 month when the rent is payable monthly, or in any case 1 year.

The option to purchase accrued at the termination of the Lease on October 3, 1999. While a reasonable period of time must be granted to Situs to exercise the option, the contractual basis for the option to purchase does not extend indefinitely through a holdover period. Pursuant to § 70-26-204, MCA, Situs maintained a renewed month-to-month lease on the same terms of tenancy as the original Lease,[4] but the option

---

[3] Title 70, chapter 24, is the Residential Landlord and Tenant Act of 1977, and does not apply to commercial properties.

[4] As discussed in *Willson v. Terry*, 265 Mont. 119, 874 P.2d 1234 (1994), a renewal of a lease pursuant to § 70-26-204, MCA, cannot be presumed to contain all the terms of the initial written agreement when renewed beyond one year.

to purchase was a separate and independent covenant, which is not statutorily renewed as a term of tenancy absent some language in the contract providing for renewal.

¶22 According to the allegations in the complaint, Situs exercised their right to purchase the real estate from Murphy by written notice. The parties were initially unable to agree on a purchase price. Situs allege that Murphy agreed to appoint an appraiser to determine the fair market value of the property on September 28, 2000. However, Murphy did not follow through and no appraisal was performed. Pursuant to § 27-2-202(1), MCA, an action to enforce a contract provision must be commenced within eight years. Generally, "a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Section 27-2-102(1)(a), MCA. Montana law states that:

> Where a right exists but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the demand is made, except where the right grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends.

Section 27-2-301, MCA.

¶23 Relying on §§ 27-2-102(1)(a) and -301, MCA, and the nature of the option to purchase, we conclude that the statute of limitations began to run on Situs' claims at the time they exercised the option by demanding performance. As noted above, the Situs did not establish in the District Court the actual date upon which they ostensibly provided

11

written notice to Murphy of their interest in purchasing the property. *See* Opinion, ¶ 6. For purposes of the statute of limitations, however, even if we look to September 28, 2000, the date upon which Situs claim in their complaint that Murphy allegedly agreed to the appointment of an appraiser, the commencement of Situs' action was still untimely. Situs commenced an action to enforce the option to purchase on August 17, 2009. Situs can prove no set of facts that would demonstrate that they commenced their cause of action within eight years of the exercise of their option, as required by § 27-2-202(1), MCA. Accordingly, we hold that the District Court did not err in granting Murphy's motion to dismiss Situs' complaint as time-barred by § 27-2-202(1), MCA.

¶24    Situs also argue that Murphy should be equitably estopped from claiming protection under the statute of limitations. Situs assert that Murphy initially acquiesced when Situs attempted to exercise the option, and that Murphy's ensuing silence in response to their efforts to get an appraisal induced the Situs into believing that Murphy did not intend to repudiate the contract.

¶25    To succeed on an equitable estoppel claim, a party must prove the following six elements**:** (1) the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) the party estopped must have knowledge of these facts at the time of the representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to that party; (3) the truth concerning these facts must be unknown to the other party at the time it was acted upon; (4) the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both

12

natural and probable that it will be acted upon; (5) the conduct must be relied upon by the other party and lead that party to act; and (6) the other party must in fact act upon the conduct in such a manner as to change its position for the worse. *Johnson Farms, Inc. v. Halland*, 2012 MT 215, ¶ 28, 366 Mont. 299, ___ P.3d ___; *Pankratz Farms, Inc. v. Pankratz*, 2004 MT 180, ¶ 67, 322 Mont. 133, 95 P.3d 671.

¶26 We conclude that the doctrine of equitable estoppel has no application under the facts presented here. We have previously determined that Situs did not need to wait until Murphy expressly repudiated the option before commencing an action to enforce the option. This Court has held that estoppel arises "when a party through its acts, conduct, or acquiescence, has caused another party in good faith to change its position for the worse." *Selley v. Liberty Northwest Ins. Corp.*, 2000 MT 76, ¶ 9, 299 Mont. 127, 998 P.2d 156. We also observed in *Selley* that the doctrine is intended "to prevent one party from unconscionably taking advantage of a wrong while asserting a strict legal right, and will be invoked where justice, honesty, and fair dealing are promoted." *Selley*, ¶ 11 (internal quotations marks omitted). It cannot reasonably be argued that by invoking the statute of limitations after eight years, Murphy acted unconscionably or unjustly, or that Situs were lulled for that long into changing their position for the worse. Situs had eight years to file an action on the contract. We will not fault Murphy for Situs' failure to act within that time period.

¶27 We hold that Situs have failed to demonstrate a set of facts that would enable them to equitably estop Murphy from raising her statute of limitations defense.

13

¶28    *Did the District Court improperly consider matters outside the pleadings in ruling on Murphy's motion to dismiss, and fail to provide proper notice and an opportunity for the Situs to present all pertinent materials pursuant to a M. R. Civ. P. 56 motion for summary judgment?*

¶29    When presented with a Rule 12(b)(6) motion to dismiss, a district court has the discretion to consider matters presented to it that are outside of the pleadings, but if it chooses to do so, it must treat the motion as one for summary judgment under M. R. Civ. P. 56 and provide notice to the parties of its intention. *Lozeau v. GEICO Indem. Co.*, 2009 MT 136, ¶ 10, 350 Mont. 320, 207 P.3d 316; *Meagher*, ¶ 16. The district court is required to provide notice to the parties of its intention to convert a motion to dismiss into a motion for summary judgment "to allow the parties a reasonable opportunity to present all material made pertinent to the motion and avoid surprise." *Plouffe*, ¶ 15.

¶30    Situs assert that the District Court improperly considered matters beyond the scope of the motion to dismiss because its order dismissing Situs' claims referenced a fact outside the pleadings in a footnote. The footnote in question reads as follows:

> The complaint indicates the rent change was March 2009, while an unsigned letter with a handwritten date of April 1, 2008 included within exhibit 1 to Plaintiff's response to the motion to dismiss states that the rent increase was to begin May 1, 2008.

The date the rent increased had no bearing on the District Court's analysis of the statute of limitations. The footnote merely noted the inconsistencies within Situs' own filings. The District Court's inclusion of this fact in a footnote does not convert the motion to dismiss into a motion for summary judgment, and therefore did not deprive Situs of an opportunity to present additional materials for the District Court's consideration. We

14

hold that the District Court did not improperly consider matters outside the pleadings in reaching its decision to dismiss Situs' complaint pursuant to Rule 12(b)(6).

## CONCLUSION

¶31 For the foregoing reasons, we affirm the District Court's dismissal of Situs' complaint.

/S/ Patricia Cotter

We Concur:

/S/ Mike McGrath
/S/ Beth Baker
/S/ Michael E Wheat
/S/ Jim Rice