DA 16-0618

FILED

12/19/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0618

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 313

_____

KENNETH ANDERSON and BOBBIE ANDERSON,

        Plaintiffs and Appellants,

        v.

RECONTRUST COMPANY, N.A. BAC HOME LOANS
SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS
SERVICING, LP, FEDERAL NATIONAL MORTGAGE ASSOCIATION
and JOHN DOE CORPORATIONS/LLCS/PARTNERSHIPS/
BUSINESS TRUSTS/ANY OTHER TYPE ORGANIZATION OR
BUSINESS ENTITY NOS. I-V,

        Defendants and Appellees.

_____

APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV 11-1299D
                 Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Paul A. Sandry, Johnson, Berg, & Saxby, PLLP; Kalispell, Montana

        For Appellees:

                Mark D. Etchart, Browning, Kaleczyc, Berry & Hoven, P.C.; Helena,
                Montana

_____

                           Submitted on Briefs:  July 26, 2017

                                   Decided:  December 19, 2017

Filed:

                              _____
                                       Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Kenneth and Bobbie Anderson (Andersons) appeal the judgment of the Montana Eleventh Judicial District Court, Flathead County, dismissing their asserted negligence, negligent misrepresentation, fraud, and Montana Consumer Protection Act[1] (MCPA) claims against Bank of America, N.A. (Bank of America) and ReconTrust Company N.A. (ReconTrust) pursuant to M. R. Civ. P. 12(b)(6). We restate and address the following issues on appeal:

> *1. Did the District Court erroneously dismiss Andersons' negligence, negligent misrepresentation, fraud, and MCPA claims pursuant to M. R. Civ. P. 12(b)(6)?*
>
> *2. Did the District Court err by not sua sponte converting ReconTrust's Rule 12(b)(6) motion to dismiss into a motion for summary judgment pursuant to M. R. Civ. P. 12(d) upon the filing of an affidavit in support of Andersons' brief in opposition?*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On March 23, 2007, Andersons took out a loan from Mountain West Bank for the purchase of a home in Kalispell, Montana, secured by a residential trust indenture. As of July 2010, Mortgage Electronic Registration Systems, Inc. (MERS) owned the beneficial interest in the loan and mortgage. ReconTrust was the trustee under the trust indenture. In September 2011, after experiencing financial difficulty and defaulting on their mortgage, Andersons contacted Bank of America to inquire about a loan modification. At that time, a trustee's foreclosure sale of Andersons' property was previously scheduled for October 3,

---

[1] Title 30, chapter 14, part 1, MCA.

2011. Later in September 2011, following a series of telephone calls and exchanges of information, Bank of America informed Andersons that they preliminarily qualified for a loan modification under the Home Affordable Modification Program (HAMP).

¶4     HAMP is a federal program introduced in 2009 in response to the subprime mortgage crisis. The program assists qualified homeowners to avoid mortgage foreclosure by modifying monthly loan payments to affordable levels. To qualify for a HAMP loan modification, homeowners must satisfy various threshold eligibility requirements and then make lower mortgage payments on a trial basis for three consecutive months. Upon successful completion of the trial period, the modification becomes permanent.

¶5     Andersons assert on appeal that, despite repeated assurances from Bank of America in September 2011 that they qualified for a HAMP loan modification and that the conditional approval would preempt the scheduled foreclosure sale, the bank ultimately denied the requested loan modification. In the absence of a loan modification, the trustee's foreclosure sale proceeded as previously scheduled, at which the trustee sold the property to the Federal National Mortgage Association (FNMA a/k/a Fannie Mae). Andersons then sued Bank of America, ReconTrust, and FNMA based on alleged violations of the Montana Small Tract Financing Act, breach of contract, HAMP-related violations, negligence, fraud, negligent misrepresentation, and unfair or deceptive practices in violation of the Montana Consumer Protection Act.

¶6     On April 16, 2012, Bank of America and ReconTrust filed a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6) on the asserted ground that Andersons' First Amended

Complaint stated insufficient facts to entitle them to relief on their asserted claims. Andersons filed a brief in opposition to the motion with a supplemental affidavit setting forth additional facts in support of their claims. Andersons did not move for conversion of the motion to dismiss into a motion for summary judgment pursuant to M. R. Civ. P. 12(d). The District Court ultimately dismissed all of Andersons' claims pursuant to M. R. Civ. P. 12(b)(6) without consideration of the facts set forth in Andersons' supplemental affidavit. Andersons timely appealed, challenging only the dismissal of their negligence, negligent misrepresentation, fraud, and Montana Consumer Protection Act claims.

## STANDARD OF REVIEW

¶7     Whether an asserted claim fails to sufficiently state a claim upon which relief may be granted is a question of law reviewed de novo for correctness under the standards of M. R. Civ. P. 12(b)(6). *Sinclair v. BNSF Ry. Co.*, 2008 MT 424, ¶ 25, 347 Mont. 395, 200 P.3d 46. Whether a district court properly converted, or failed to convert, a motion to dismiss into a motion for summary judgment pursuant to M. R. Civ. P. 12(d) is a discretionary matter reviewed for an abuse of discretion.

## DISCUSSION

¶8     An asserted claim is subject to dismissal if, as pled, it is insufficient to state a cognizable claim entitling the claimant to relief. M. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the court must take all well-pled factual assertions as true and view them in the light most favorable to the claimant, drawing all reasonable inferences in favor of the claim. *Kleinhesselink v. Chevron, U.S.A.*, 277 Mont. 158, 161, 920 P.2d 108, 110 (1996); *Boreen*

4

*v. Christenson*, 267 Mont. 405, 408, 884 P.2d 761, 762 (1994); *Willson v. Taylor*, 194 Mont. 123, 126, 634 P.2d 1180, 1182 (1981). A claim is subject to M. R. Civ. P. 12(b)(6) dismissal only if it either fails to state a cognizable legal theory for relief or states an otherwise valid legal claim but fails to state sufficient facts that, if true, would entitle the claimant to relief under that claim. *See Kleinhesselink*, 277 Mont. at 161, 920 P.2d at 110; *Fandrich v. Capital Ford Lincoln Mercury*, 272 Mont. 425, 428-29, 901 P.2d 112, 114 (1995); *Boreen*, 267 Mont. at 408, 884 P.2d at 762. *See also Ryan v. City of Bozeman*, 279 Mont. 507, 511-13, 928 P.2d 228, 230-32 (1996) (claimant burden to "adequately plead a cause of action"); *Mysse v. Martens*, 279 Mont. 253, 266, 926 P.2d 765, 773 (1996) (complaint must state factual basis of all elements of a cognizable legal claim); M. R. Civ. P. 8(a) (complaint must set forth a short and plain statement of a cognizable legal claim showing that the pleader is entitled to relief). The liberal notice pleading requirements of M. R. Civ. P. 8(a) and 12(b)(6) do "not go so far to excuse omission of that which is material and necessary in order to entitle relief," and the "complaint must state something more than facts which, at most, would breed only a suspicion" that the claimant may be entitled to relief. *Jones v. Montana University System*, 2007 MT 82, ¶ 42, 337 Mont. 1, 155 P.3d 1247; *Ryan*, 279 Mont. at 512, 928 P.2d at 231; *Mysse*, 279 Mont. at 266, 926 P.2d at 773.

¶9    *1. Did the District Court erroneously dismiss Andersons' negligence, negligent misrepresentation, fraud, and MCPA claims pursuant to M. R. Civ. P. 12(b)(6)?*

¶10    In the context of loan applications and servicing, the nature of the relation between lender and borrower is generally a non-fiduciary, arms-length contractual relationship

5

limited to express contract duties and the implied duty of good faith and fair dealing. *Morrow v. Bank of America N.A.*, 2014 MT 117, ¶¶ 34-35, 375 Mont. 38, 324 P.3d 1167. Unless otherwise provided by contract, a lender generally has no duty to modify or renegotiate a loan to provide more favorable terms to help a debtor avoid default and foreclosure. *Morrow*, ¶¶ 34, 39. The mere offering and administration of HAMP loan modifications in accordance with program rules and guidelines is insufficient alone to give rise to any special relationship or duty between a lender and borrower. *Morrow*, ¶¶ 34-40. "HAMP does not provide a private right of action and does not itself create a duty of care." *Morrow*, ¶ 39. Thus, a lender generally has no duty to forego or prevent foreclosure and may "refuse to modify or renegotiate a loan" for legitimate business reasons. *Morrow*, ¶ 36.

¶11 However, extraordinary circumstances or interaction between a lender and borrower or applicant may nonetheless independently give rise to a general or fiduciary duty of care to the borrower or applicant. *See Fisher v. Swift Transp. Co., Inc.*, 2008 MT 105, ¶ 16, 342 Mont. 335, 181 P.3d 601 (distinguishing between general common law duty of reasonable care and heightened duty arising from special relationships). All individuals have a general common law duty to use reasonable care under the circumstances to avoid causing foreseeable harm to others. Sections 1-1-204, 27-1-701, and 28-1-201, MCA (codification of common law duty and negligence theory)*; Fisher*, ¶ 16; *Busta v. Columbus Hosp.*, 276 Mont. 342, 360-71, 916 P.2d 122, 133-39 (1996) (discussing duty as a function of reasonable foreseeability of harm). Moreover, based on the relative disparity of knowledge

and the objectively reasonable expectation that the recipient should be able to trust and rely upon a professional advisor, the provision of professional advice intended to guide another in the conduct of the other's affairs regarding a technically complex subject matter generally gives rise to a fiduciary relationship, with attendant fiduciary duties of loyalty, trust, and competence owed to the recipient of the advice. *Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1312 (Colo. App. 1998) (fiduciary relationship "arises when one party has a high degree of control over the property or subject matter of another" or when a party "places a high level of trust and confidence in the fiduciary to look out for the beneficiary's best interest"); *Matter of Cooperman*, 633 N.E.2d 1069, 1071 (N.Y. 1994) (fiduciary duties include honesty, good faith, fair dealing, loyalty, confidentiality, and competency in safeguarding beneficiary interests). *See also Draggin' Y Cattle Company, Inc. v. Addink & Junkermier, Clark, Campanella, Stevens, P.C.*, 2013 MT 319, ¶¶ 23-24, 372 Mont. 334, 312 P.3d 451 (recognizing nature of CPA tax advisor/client relationship in context of malpractice and breach of fiduciary duty claims); *Kerrigan v. O'Meara*, 71 Mont. 1, 6, 227 P. 819, 821 (1924) (fiduciary relationship is a special relationship wherein one reposes special trust, confidence, or reliance in the expertise, integrity, or loyalty of another). Consequently, an otherwise arms-length relationship between a lender and borrower or applicant may ripen into a fiduciary relationship "of trust and confidence," with attendant fiduciary duties, if the lender gives advice beyond that customary in arms-length lending and loan servicing transactions. *Morrow*, ¶¶ 35-36.

¶12    In the event a general or fiduciary duty of care arises in the consumer lending context, the question of whether a breach of fiduciary duty occurred is generally a question of fact based on the prevailing standard of care as established by expert testimony and any regulatory guidelines. *See Dulaney v. State Farm Fire & Cas. Ins. Co.*, 2014 MT 127, ¶¶ 12-15, 375 Mont. 117, 324 P.3d 1211; *Stanton v. Wells Fargo Bank Montana, N.A.*, 2007 MT 22, ¶ 24, 335 Mont. 384, 152 P.3d 115; *Schuff v. AT Klemens & Son*, 2000 MT 357, ¶¶ 34-37, 303 Mont. 274, 16 P.3d 1002; *Carlson v. Morton*, 229 Mont. 234, 238-41, 745 P.2d 1133, 1136-38 (1987). Thus, though insufficient to give rise to a duty of care, pertinent HAMP guidelines may be relevant evidence, *inter alia*, of the standard of care owed by a lender to a HAMP applicant in the context of a fiduciary relationship. *Morrow*, ¶ 39.[2]

¶13    In *Morrow*, prior to defaulting on their home mortgage loan, a financially distressed couple applied to Bank of America in 2009 for a HAMP loan modification. *Morrow*, ¶¶ 10-13. Bank of America preliminarily approved the requested loan modification and thereafter accepted bank-specified reduced mortgage payments from the couple for over a year. *Morrow*, ¶¶ 16-21. Upon further review, the bank ultimately withdrew its preliminary loan modification approval and scheduled the couple's home for a foreclosure sale. *Morrow*, ¶¶ 16-21. In response, the homeowners sued Bank of America for breach

---

[2] *Inter alia*, HAMP guidelines recommend that lenders provide complete and accurate information to help debtors understand and avoid confusion regarding HAMP services, processes, and requirements, to timely respond and resolve debtor inquiries and complaints, and to promptly determine debtor eligibility and notify debtors of the determination. *See Morrow*, ¶¶ 40-41.

of contract, tortious bad faith, negligence, negligent misrepresentation, fraud, and violation of the MCPA. *Morrow*, ¶¶ 16-21. In support of their claims, the couple alleged that Bank of America: (1) advised them in October 2009 to intentionally default on their mortgage in order to become eligible for the requested loan modification; (2) subsequently advised them that they were "locked" for the loan modification subject only to execution of the transaction documents and satisfaction of the trial period loan payments; (3) advised them in early 2010 to ignore the loan default and acceleration notices from the bank; (4) later stated in writing that final approval was still pending but assured them that foreclosure would not occur as long as they continued making reduced trial payments; and (5) repeatedly advised them to continue to ignore subsequent default and acceleration notices from the bank. *Morrow*, ¶¶ 14-21. Following hearing on the parties' cross-motions for summary judgment, the District Court granted summary judgment to Bank of America on all of the homeowners' claims on the grounds that the applicable statute of frauds precluded their contract-based claims and that the bank had no general or fiduciary duty to the homeowners apart from the contract duties expressed and implied in their loan and mortgage contract. *Morrow*, ¶¶ 22-23.

¶14 On appeal, we held that the district court correctly granted summary judgment to Bank of America on the homeowners' contract-based claims on the ground that, even if proven, the alleged verbal contract purportedly binding Bank of America to modify the

loan was only executory and thus unenforceable under the applicable statute of frauds.[3] *Morrow*, ¶¶ 25-31. However, on the homeowners' negligence claim, we found that a genuine issue of material fact remained as to whether a fiduciary relationship, and attendant duties, arose (*i.e.*, whether the bank gave advice to the homeowners beyond that customary in arms-length lending and loan servicing). *Morrow,* ¶¶ 32-42. We further found that related genuine issues of material fact remained as to whether the advice given by the bank breached the applicable standard of care and whether the homeowners detrimentally relied on that advice. *Morrow,* ¶¶ 32-42.[4]

¶15    As to the homeowners' other claims, we similarly held that genuine issues of material fact precluded summary judgment on the essential elements of negligent misrepresentation, as defined in *Western Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 66, 359 Mont. 34, 249 P.3d 35 (citing *Restatement (Second) of Torts* § 552 (1977)), and actual fraud, as defined in *In re Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487. *Morrow,* ¶¶ 43-51, 56-60. We found further that genuine issues of material fact also precluded summary judgment as to whether Bank of America engaged in "unfair or deceptive acts or practices" for purposes of the MCPA by advising the homeowners to default, to thereafter make only partial payments, and to ignore default notices from the

---

[3] *See* §§ 71-1-203, -305, MCA (modification of mortgages and trust indentures modifiable only by subsequent written agreement or executed oral contract).

[4] Even in the context of a fiduciary relationship, a breach of fiduciary duty by the lender is not a cause of any resulting harm if the applicant or borrower ultimately relied on the independent advice of another, such as legal counsel. *Morrow,* ¶ 36.

bank while at the same time "keeping them in a loan servicing status that required them to make full payments" subject to foreclosure on default. *Morrow*, ¶¶ 67-70. Thus, we ultimately held that the district court erroneously granted summary judgment on the homeowners' negligence, negligent misrepresentation, fraud, and MCPA claims.

¶16 By analogy to *Morrow*, Andersons assert the District Court erroneously dismissed their negligence, negligent misrepresentation, fraud, and MCPA claims pursuant to M. R. Civ. P. 12(b)(6). However, in contrast to the factual allegations in *Morrow*, Andersons' First Amended Complaint essentially alleges only that: (1) they "entered into discussions with Bank of America" for a loan modification on or about September 2011; (2) the bank advised them "that they qualified for a loan modification . . . if they could demonstrate . . . [the] ability to make a reduced mortgage payment" for 3-4 months; (3) the bank repeatedly "lost or misplaced" Andersons' previously-provided application information; (4) "they [were] never able to speak with the same [bank] employee" and "each new employee with whom they [were] required to deal [was] unfamiliar with [their] circumstances"; and (5) the bank backed out of its "agreement" to modify Andersons' loan, thereby allowing the trustee (ReconTrust) to proceed with the previously scheduled foreclosure sale despite knowledge of their purported agreement with the bank.

¶17 As a threshold matter, as in *Morrow*, Andersons' purported loan modification agreement with Bank of America was, as pled, no more than an executory oral agreement unenforceable under the applicable statute of frauds. *See Morrow*, ¶¶ 25-31. Moreover, the essential elements of a negligence claim are the existence of a legal duty of care owed

11

by the tortfeasor to the claimant, breach of that duty, causation of harm, and resulting damages. *Morrow*, ¶ 33. In support of their negligence claim, Andersons' amended complaint did not allege that ReconTrust made any representation to them whatsoever or that it was in any way otherwise involved in the handling of their loan modification application. As to Bank of America, unlike in *Morrow*, the amended complaint did not allege that the bank gave Andersons any advice beyond basic information about HAMP and whether they qualified for loan modification under the program. The complaint did not allege or imply that Bank of America advised or otherwise induced them to default on their mortgage. The amended complaint essentially alleged no more than that Bank of America mistakenly told Andersons that they qualified for a loan modification and then, within a matter of days, backtracked and told them they did not. Viewed in the light most favorable to their negligence claim, Andersons' amended complaint stated insufficient facts to give rise to a fiduciary relationship, and attendant duties, between them and the bank or the trustee. The amended complaint was similarly devoid of any assertion that, but for their reliance on the alleged bank error, they would have timely cured their default and avoided foreclosure. Nor did the amended complaint allege that the alleged bank error caused them to suffer any other harm. The District Court correctly concluded that Andersons' amended complaint failed to state sufficient facts entitling them to relief on the duty and causation elements of their negligence claim.

¶18 *Inter alia*, negligent misrepresentation requires proof of a false or misleading statement negligently provided in the course of business, or in regard to a transaction of

12

mutual interest, to guide another who then justifiably relied on the misrepresentation to the person's detriment. *Western Sec. Bank,* ¶ 66 (five-element formulation of negligent misrepresentation). In contrast, actual fraud requires proof, *inter alia*, of a recipient's justified detrimental reliance on a knowingly or recklessly false representation made by another with the intent to induce the recipient's reliance thereon. *See Morrow,* ¶¶ 57-59 (citing *Kindsfather,* ¶ 17 (nine-element formulation of actual fraud)).[5] As with their negligence claim, the stated factual bases for Andersons' negligent misrepresentation and fraud claims boil down to no more than that Bank of America erroneously told them that they qualified for a loan modification and then, within a matter of days, backtracked and told them they did not. Again, the amended complaint did not allege that ReconTrust made any representation to Andersons or that it was in anyway involved in the handling of their loan modification application. Unlike in *Morrow,* the complaint does not allege that Bank of America induced Andersons to take, or refrain from, any action, or that, but for their reliance on the bank's initial misrepresentation, they would have timely cured their default and avoided foreclosure. Thus, the complaint is devoid of any facts that, taken as true, would constitute detrimental reliance on Bank of America's alleged misrepresentation that they were eligible for a loan modification. The District Court correctly held that Andersons' amended complaint failed to state sufficient facts entitling them to relief on all essential elements of their asserted negligent misrepresentation and fraud claims.

---

[5] *But see Morrow,* ¶ 89 (McKinnon, J., dissenting with respect to the requisite mental state).

¶19 The Montana Consumer Protection Act provides a private cause of action for actual and treble damages upon proof that a consumer suffered "ascertainable loss of money or property" caused by the "use or employment" of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Sections 30-14-103, -133(1), MCA. The MCPA does not specifically define what constitutes an unfair or deceptive trade act or practice but expresses legislative intent that courts give "due consideration and weight" to interpretations of § 5(a)(1) of the Federal Trade Commission Act (FTC Act)[6] by the Federal Trade Commission (FTC) and federal courts. Section 30-14-104(1), MCA. The MCPA further authorizes the Montana Department of Justice to "make rules interpreting" § 30-14-103, MCA, "consistent with" FTC and federal court "rules, regulations, and decisions" interpreting the provisions of § 5(a)(1). Section 30-14-104(2), MCA. The Department of Justice has accordingly specified by rule a non-exhaustive list of unlawful or deceptive trade acts and practices. Admin. R. M. 23.19.101. The phrase "unfair or deceptive act or practice" thus includes, *inter alia*, statements made in commerce "that a transaction involves rights, remedies or obligations that it does not involve." Admin. R. M. 23.19.101(1)(l). Consistent with federal law and similar consumer protection acts of other states, we have construed § 30-14-103, MCA, to more broadly define an unfair trade practice as a practice contrary to "established public policy *and* which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 2009 MT 35, ¶ 31, 349 Mont. 197, 203 P.3d 759 (emphasis added).

---

[6] 15 U.S.C. § 45(a)(1), as amended.

¶20    In *Morrow*, we held that genuine issues of fact remained as to whether Bank of America engaged in an unfair or deceptive trade act or practice by advising the mortgage debtors to default, to thereafter make only reduced payments, and to continue to ignore repeated notices of default from the bank while at the same time "keeping them in a loan servicing status that required them to make full payments" subject to foreclosure on default. *Morrow*, ¶¶ 67-70.  As noted previously, Andersons' amended complaint alleges nothing similar or close to the bank conduct at issue in *Morrow*.

¶21    The amended complaint did not allege that ReconTrust made any representation or did anything other than to proceed with a foreclosure sale under the original terms of the loan and trust indenture documents.  The amended complaint further stated no facts that would elevate the alleged bank mistake, and related conduct, to the level of an act or practice that is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" within the plain meaning of those terms.  Nor did the amended complaint allege in regard to Admin. R. M. 23.19.101(1)(l) that Bank of America induced Andersons to enter into any transaction by misrepresenting that the transaction "involve[d] rights, remedies or obligations that it d[id] not involve."

¶22    A private MCPA claim also requires proof that the alleged unfair or deceptive trade act or practice caused the complaining consumer to suffer an "ascertainable" financial or property "loss."  Section 30-14-133(1), MCA.  As previously noted regarding the causation of harm and detrimental reliance elements of Andersons' other claims, the amended complaint was devoid of any factual assertion that, but for their reliance on Bank of

15

America's initial alleged misrepresentation regarding their loan modification eligibility, Andersons would have timely cured their default and avoided foreclosure. The District Court correctly concluded that Andersons' amended complaint failed to state sufficient facts entitling them to relief on all essential elements of their asserted MCPA claim. We hold that the District Court correctly concluded that Andersons' amended complaint failed to state sufficient facts entitling them to relief on all essential elements of their asserted negligence, negligent misrepresentation, fraud, and MCPA claims.

¶23　*2.　Did the District Court err by not sua sponte converting ReconTrusts's Rule 12(b)(6) motion to dismiss into a motion for summary judgment pursuant to M. R. Civ. P. 12(d) upon the filing of an affidavit in support of Andersons' brief in opposition?*

¶24　When considering a Rule 12(b)(6) motion to dismiss, district courts have discretion to consider matters presented outside of the pleadings. *Ming Da Situ v. Smole*, 2013 MT 33, ¶ 29, 369 Mont. 1, 303 P.3d 747. In such event, the court must give notice that it is converting the motion into a motion for summary judgment under M. R. Civ. P. 56 and afford the parties the opportunity to make the factual showings necessary to support or oppose the motion. M. R. Civ. P. 12(d). Mere reference to a fact outside the pleadings having no bearing on the court's decision is insufficient to require conversion of a motion to dismiss to a motion for summary judgment. *Ming Da Situ*, ¶ 30. Andersons have made no showing or assertion that the District Court considered any extrinsic matter and we will not assume that a district court considered matters outside the pleadings absent some contrary showing or indication. *Jones*, ¶ 17; *City of Cut Bank v. Tom Patrick Contr., Inc.*, 1998 MT 219, ¶ 20, 290 Mont. 470, 963 P.2d 1283.

16

¶25 Without citation to authority, Andersons assert that their filing of a supplemental affidavit in support of their brief in opposition to the motion to dismiss automatically required the District Court to convert the motion into a motion for summary judgment pursuant to M. R. Civ. P. 12(d) and to then consider the facts set forth in their supplemental affidavit. However, we are aware of no textual basis or authority for Andersons' proposition that the mere filing of an affidavit in opposition to a motion to dismiss automatically requires the court to convert a motion to dismiss into a motion for summary judgment regardless of whether the court considers facts outside the pleadings.

¶26 In pertinent part, M. R. Civ. P. 12(d) applies only when "matters outside the pleadings are presented to *and not excluded by the court*." (Emphasis added.) Regardless of the mere filing of an affidavit in opposition to a motion to dismiss, the district court retains the discretion to convert a motion to dismiss into a motion for summary judgment. Here, Andersons were free to move the court to convert the motion to dismiss to a motion for summary judgment pursuant to M. R. Civ. P. 12(d). As Andersons point out, ReconTrust's motion to dismiss was fully submitted on the briefs for more than 3 years before ruling. Andersons neither timely moved for conversion within their allotted response time under Uniform District Court Rule 2, nor thereafter filed, or sought leave to file, a motion for conversion. Under these circumstances, we hold that the District Court did not abuse its discretion in failing to convert ReconTrust's motion to dismiss into a motion for summary judgment *sua sponte*.

**CONCLUSION**

¶27     We hold that the District Court correctly determined that Andersons' First Amended Complaint failed to state sufficient facts under the standards of M. R. Civ. P. 12(b)(6) to entitle them to relief on all essential elements of their asserted negligence, negligent misrepresentation, fraud, and MCPA claims.  We therefore hold that the District Court correctly dismissed all claims pursuant to M. R. Civ. P. 12(b)(6).  We hold further that the District Court did not abuse its discretion in failing to convert ReconTrust's motion to dismiss into a motion for summary judgment *sua sponte*.

¶28     Affirmed.


                                                    /S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ JIM RICE