Justice Jim Rice delivered the Opinion of the Court.
***287 ¶1 Appellants Tim Kleppen and Raelene Kleppen (Kleppens) appeal the order entered by the Eighteenth Judicial District Court, Gallatin County, after trial, granting specific performance of a contract to Shannon Miller (Miller). We affirm, addressing the following issues:
*808 ***288 1. Did the District Court err by concluding Miller's breach of contract claim was not barred by the statute of limitation?
2. Did the District Court err by determining Miller was entitled to specific performance of the contract?
3. Did the District Court err by dismissing Kleppens' trespass claim?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 This case concerns a boundary realignment agreement between two neighboring property owners in Gallatin County. Miller is the owner of Tract 241 of the Rainbow Subdivision of Bozeman Hot Springs, which she purchased and has lived on since 1989. Miller bought and owned the tract jointly with her husband, William, until his death in 2008. Kleppens are the owners of Tract 242 of the Subdivision, which they purchased pursuant to a contract for deed and obtained record title to in 2000.
¶3 In July 1999, Kleppens initiated an action against Millers in Gallatin County Justice Court, alleging Millers had erected improvements to their tract that extended onto Kleppens' tract. In November 1999, after participating in mediation through the Justice Court, the parties entered into a settlement, first memorialized by a hand-written agreement and diagram, wherein they agreed to a boundary realignment of their common boundary line between Tracts 241 and 242 by exchanging equal amounts of property. The diagram depicted the intended boundary realignment and notes about the property. As the District Court found, the handwritten agreement contemplated a formal Stipulation, which was typed and then signed by the parties on December 1, 1999. The Stipulation provided the following description of the revised property line intended by the parties, referring to the handwritten diagram:
From Point A, as set forth on the agreed upon diagram, the new property line will head southernly to a distance eight feet to the direct south of the furthest southernly point of Miller mobile home, hence west to a point directly north of Point B, hence directly north to Point B. The area encompassed by the new property line as it traverses Kleppen's Lot will be computed. The new property line will then traverse Miller's lot by beginning at Point A, heading northernly for a distance, hence easternly a distance until it intersects the easternly boundary line of Miller's Lot. The amount the new property line will traverse Miller's Lot will be determined by adjusting the lines so that the same amount of acreage taken from the Kleppen Lot will be taken from the ***289 Miller Lot.
¶4 To accomplish the boundary realignment, the Stipulation provided that the parties would: (1) obtain a mutually acceptable surveyor to complete a property line readjustment to be filed with the Gallatin County Clerk and Recorder, with costs to be split equally between the parties; (2) construct a fence along the new boundary realignment on or before June 15, 2000, with costs to be split equally between the parties and "Miller" performing the labor at no cost to Kleppens; (3) remove Millers' basketball hoop from Kleppens' property, to be completed by Millers; and (4) address bushes currently on the property line. The Stipulation provided that "[w]hen the fence construction is complete the attorneys for both parties will file a motion with this Court for an Order of Dismissal with prejudice."
¶5 Following execution of the Stipulation, Millers removed the basketball hoop as required by the Stipulation. Over the years thereafter, Kleppens watered, mowed, and fertilized the property they were to gain under the Stipulation, and Millers mowed, sprayed weeds, and trimmed the trees on the portion they were to gain under the Stipulation. However, neither party retained a surveyor to complete the boundary realignment or purchased materials to complete the construction of the fence, and therefore, the boundary realignment was never recorded in Gallatin County, and the fence was not built.
¶6 The District Court found that, "[f]rom December 1, 1999 through May 7, 2016, neither party expressed or acted in a manner contrary to the ownership and boundary realignment terms of the Stipulation," and that "[n]either party acted in a manner that suggest[ed] they did not intend to complete the terms of the Stipulation."
*809 ¶7 On May 8, 2016, Kleppen approached Shannon Miller and asked her to remove her power pole, gas meter, pump house, and two trees from "his property"-property that was to be transferred to Miller under the Stipulation. Kleppens placed stakes and a string-line in the ground to mark the original boundary line, and cut down two trees in the area that was to be transferred to Miller. The District Court found these actions were "the first notification to Miller that the Kleppens no longer intended to abide by the terms of the Stipulation."
¶8 In June 2016, Miller filed this action in the Gallatin County District Court, seeking specific performance of the Stipulation. Kleppens counterclaimed in trespass, and sought removal of Miller's property improvements. The District Court conducted a bench trial and held in favor of Miller, reasoning that Kleppens did not challenge the validity of the Stipulation, and did not assert any defenses that would support rescinding the Stipulation; that both parties partially ***290 performed their agreement; that the statute of limitations for breach of contract did not begin to run until Miller first learned of Kleppens' intention to not comply with the Stipulation, on May 8, 2016, and that Miller could not have learned of the breach prior to that time. The District Court ruled Miller was entitled to specific performance and dismissed Kleppens' trespass claim. The District Court ordered the parties to complete a survey of the property within 90 days of the order, and to construct a fence within 90 days of completion of the survey.
¶9 Kleppens appeal.
STANDARD OF REVIEW
¶10 "In an action tried without a jury, we review the district court's findings of fact under the clearly erroneous standard. A district court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. We review a district court's conclusions of law de novo, determining whether the court's interpretation and application of the law is correct." Blazer v. Wall , 2008 MT 145, ¶ 22, 343 Mont. 173, 183 P.3d 84 (citations omitted). Statute of limitations present a question of law; accordingly, "[w]e review for correctness the district court's application of the statute of limitations." Wing v. State , 2007 MT 72, ¶ 9, 336 Mont. 423, 155 P.3d 1224 ; accord Gulf Ins. Co. v. Clark , 2001 MT 45, ¶ 13, 304 Mont. 264, 20 P.3d 780.
DISCUSSION
¶11 1. Did the District Court err by concluding Miller's breach of contract claim was not barred by the statute of limitation?
¶12 Kleppens argue the District Court erred by ruling Miller's breach of contract claim was not barred under § 27-2-202(1), MCA, which provides that an action for breach of a written contract must be brought within 8 years. Kleppens pose that Miller knew by June 15, 2000-the date provided in the Stipulation for completion of the fence upon the realigned boundary line-that the contract had not been completed, and, therefore, that a breach of contract had occurred. Thus, they contend a cause of action for breach then accrued.
¶13 The Stipulation was a written contract between the parties, and actions based thereon are governed by § 27-2-202, MCA. A period of limitation, such as the eight-year period here, begins to run "when the cause of action accrues."
***291 Larson v. Undem , 246 Mont. 336, 340, 805 P.2d 1318, 1321 (1990) ; McWilliams v. Clem , 228 Mont. 297, 308, 743 P.2d 577, 584 (1987) ; accord Ming Da Situ v. Smole , 2013 MT 33, ¶ 22, 369 Mont. 1, 303 P.3d 747 ; Viers v. Webb , 76 Mont. 38, 42, 245 P. 257, 258 (1926) ; § 27-2-102(2), MCA. "Generally, 'a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action.' " Ming Da Situ , ¶ 22 (quoting § 27-2-102(1)(a), MCA ). Additionally, "it has long been recognized that the statute of limitations runs from the time of the breach and not from the time of injury[.]" Kitchen Krafters v. Eastside Bank , 242 Mont. 155, 163, 789 P.2d 567, 571 (1990), overruled on other *810 grounds by Busta v. Columbus Hosp. , 276 Mont. 342, 370, 916 P.2d 122, 139 (1996).
¶14 Kleppens' accrual argument is founded upon their position that the District Court's findings of fact regarding the parties' actions and intentions are clearly erroneous. They argue "no evidence" was presented that the parties embraced the new property allocations made by the Stipulation, "other than by supposedly mowing, watering, fertilizing and weeding," and that the "only act" carried out by the parties in furtherance of the Stipulation was removal of the basketball hoop by the Millers, which they characterize as "of little consequence." Therefore, they contend that "[f]or 16 ½ years the Kleppens believed that the Millers had no intention of moving forward with the stipulation[,]" and thus the eight-year period of limitation for a breach of contract action expired in 2008.
¶15 Kleppens' factual argument offered to support accrual of the breach of contract claim in 2000 is a broad substitution of their view of the evidence for the District Court's. In direct contrast, the District Court found there had been a 16-year period of acquiescence by the parties, in which they acted only in ways consistent with the terms of the Stipulation, including removal of the basketball hoop and maintenance of the properties they respectively were to gain, and thus partially performed the Stipulation. Even after the June 5, 2000, deadline passed, the parties continued to act in partial execution of the Stipulation. Moreover, the District Court found that neither party had acted in a manner that suggested they did not intend to complete what the District Court determined were the "mutual obligations" of the parties under the Stipulation, until Kleppens' actions on May 8, 2016. See Wicklund v. Sundheim , 2016 MT 62, ¶ 37, 383 Mont. 1, 367 P.3d 403 ("Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance ***292 accepted or acquiesced in without objection is given great weight in the interpretation of the agreement" (citing Restatement (Second) of Contracts § 202(4) )). Given this record, the first actionable breach of the Stipulation occurred on that day. See State Farm Mut. Auto. Ins. Co. v. Freyer , 2013 MT 301, ¶ 27, 372 Mont. 191, 312 P.3d 403 (" 'a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract' ") (quoting Richard A. Lord, Williston on Contracts vol. 23, § 63:1 at 434 (4th ed., West Group 2002)) (defining breach of contract). Therefore, the District Court correctly determined the cause of action accrued on May 8, 2016, and was timely prosecuted by Miller under § 27-2-202(1), MCA.
¶16 2. Did the District Court err by determining Miller was entitled to specific performance of the contract?
¶17 Kleppens argue the District Court erred by granting specific performance to Miller because the Stipulation, with the diagram, were not sufficiently clear to define the acts to be taken and, thus, to compel specific performance. They contend the precise boundary was not contained in the Stipulation, and that it constituted merely an "agreement to agree" to a boundary line that would be later determined.
¶18 It is well settled that "absolute certainty and completeness in every detail is not a prerequisite of specific performance, only reasonable certainty and completeness being required." Steen v. Rustad , 132 Mont. 96, 106, 313 P.2d 1014, 1020 (1957). Matters that are merely "subsidiary, collateral, or which go to the performance of the contract are not essential, and therefore need not be expressed in the informal agreement." Steen , 132 Mont. at 106, 313 P.2d at 1020 (citations omitted). In other contexts, we have explained "[a] property description is adequate if it contains sufficient information to permit the identification of the property to the exclusion of all others." Blazer , ¶ 70 ; accord McDonald v. Jones , 258 Mont. 211, 216, 852 P.2d 588, 591 (1993) ; Peterson v. Taylor , 226 Mont. 400, 405, 735 P.2d 1120, 1123 (1987).
¶19 As quoted above, the Stipulation provided a detailed "lay," or non-surveyor's, description of the new boundary that included points marked on the accompanying diagram, the direction of the new boundary lines, and their distances in feet. This language, along with the diagram itself, provided a very clear description of the small portions of property *811 the parties were trading, as well as the new boundary line. The Stipulation was thus sufficient for purposes of specific performance, and was not merely an agreement to agree to a new boundary line in the future. ***293 ¶20 Further, as the District Court noted, because Miller's claim related to the transfer of real property, it was presumed that pecuniary compensation would not afford adequate relief. Section 27-1-419, MCA. And, because the actual damage caused by nonperformance of the Stipulation, including the difficulties in dealing with property issues related to the encroachment of Miller's improvements, would be difficult to ascertain, specific performance was appropriate. Section 27-1-411(3), MCA.
¶21 Kleppens argue Miller had obligations under the Stipulation that constituted conditions precedent, the nonfulfillment of which precluded specific performance. See Seifert v. Seifert , 173 Mont. 501, 505, 568 P.2d 155, 157 (1977). However, as the District Court determined, "the only possible action that could be considered a condition precedent was the removal of the basketball hoop. Miller completed this obligation. The remaining obligations were mutual obligations[,]" which neither party had completed. We agree that Miller did not have individual obligations under the Stipulation that rose to conditions precedent to its fulfillment, which were uncompleted.
¶22 Because this was a contract for the transfer of real property, which contained a sufficient description of the property, the District Court did not err by ordering its specific performance.
¶23 3. Did the District Court err by dismissing the Kleppens' trespass claim?
¶24 A civil trespass occurs when there is "(1) an intentional entry or holdover (2) by the defendant or a thing; (3) without consent or legal right." Davis v. Westphal , 2017 MT 276, ¶ 15, 389 Mont. 251, 405 P.3d 73. Again, Kleppens base this contention upon their view of the evidence, asserting the Millers "resisted removal of [their] encroachments until they finally got Tim Kleppen to agree to a boundary relocation so that the encroachments could remain." However, there is no finding by the District Court or evidentiary support for the idea that Millers secured the Stipulation for the purpose of remaining unlawfully on Kleppens' property. To the contrary, because there is a valid contract between the parties, and a record of partial performance and acquiescence, Miller retained the right under the Stipulation to remain on the Kleppen property pending completion of the Stipulation. Thus, the District Court did not err by dismissing the trespass claim.
¶25 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
JAMES JEREMIAH SHEA, J.